## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **JEAN-FRANCOIS GNAPI,** | ) |
| | | ) |
| | **Plaintiff,** | ) |
| **v.** | | )     **CIV-21-1017-F** |
| | | ) |
| 1. | **AMERICAN FARMERS &** | ) |
| | **RANCHERS MUTUAL** | ) |
| | **INSURANCE CO.,** | ) |
| 2. | **RICK BARANEK, an individual,** | ) |
| 3. | **ANGELA MICHELLE ROWCH,** | ) |
| | **an individual,** | ) |
| 4. | **BERNADETTE AUTREY, an** | ) |
| | **individual, and** | ) |
| 5. | **JON SRNA, an individual,** | ) |
| | | )     **JURY TRIAL DEMANDED** |
| | **Defendants.** | )     **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Jean-Francois Gnapi, and for his Complaint against Defendants, alleges and states as follows:

## PARTIES

1.    Plaintiff, Jean-Francois Gnapi, is an adult male who at all relevant times hereto was a resident of Oklahoma County, Oklahoma.

2.    Defendants are:

a.    American Farmers and Ranchers Mutual Insurance Co. ("AFRMIC"), a corporate entity doing business in and around Oklahoma County, Oklahoma;

1

b.      Rick Baranek ("Baranek"), an individual, who at all relevant times hereto was employed as the Human Resources ("HR") Director with AFRMIC;

c.      Angela Michelle Rowch ("Rowch"), an individual, who at relevant times hereto was employed as Interim Treasury Director with AFRMIC;

d.      Bernadette Autrey ("Autrey"), an individual, who at all relevant times hereto was employed as the Chief Financial Officer ("CFO") with AFRMIC; and

e.      Jon Srna ("Srna"), an individual, who at all relevant times hereto was employed as the President and Chief Executive Officer ("CEO") of AFRMIC.

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant American Farmers and Ranchers Mutual Insurance Co. and is based on the following claims: (a) violations of the Family Medical Leave Act ("FMLA"), including retaliation for having used or attempted to use FMLA qualifying leave; (b) discrimination due to his association with his father-in-law, who is a qualified individual with a disability, breach of confidentiality and retaliation for engaging in protected opposition to discrimination and participating in a complaint process in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); c) race discrimination, harassment, the creation of a racially hostile work environment, and retaliation in violation of 42 U.S.C. § 1981; (d) race discrimination, harassment, the creation of a racially hostile work environment, and retaliation for having engaged in protected opposition to race

discrimination in violation of Title VII of the Civil Rights Act of 1964; (e) violations of the Fair Labor Standards Act ("FLSA") and Emergency Paid Sick Leave Act ("EPSLA"); (f) violations of the FMLA and Family First Coronavirus Response Act ("FFCRA"); (g) invasion of privacy; (h) tortious interference with a contract/business relationship; and (i) tortious interference with a prospective economic business advantage.

4.      Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. §1367(a).

5.      To the extent required, Plaintiff has exhausted his administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed his Charge on or about January 4, 2021. Plaintiff subsequently received a Dismissal and Notice of Rights letter from the EEOC dated September 14, 2021. This case is timely filed within ninety (90) days of Plaintiff's receipt of his right to sue letter.

6.      All acts complained of herein occurred in or around Oklahoma County, Oklahoma. Oklahoma County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7.      Plaintiff, who is Black, was employed with AFRMIC for more than three (3)

years, from on or about October 16, 2017, until November 4, 2020.

8.    He was initially hired by Dean Schaffer (former Director of Underwriting) and Tena Moyer (Underwriting Supervisor) as a Britecore Analyst, but was promoted soon after to a Staff Accountant position in the Treasury Department by then-Treasury Director Robin Schausten.  He continued in this position until his wrongful termination on or about November 4, 2020.

9.    Throughout his tenure, Plaintiff was an excellent employee.  In addition to being promoted, he consistently received positive feedback on his performance.  He was also awarded multiple merit pay increases and performance-based bonuses by Schausten.

10.    Despite his good work performance, Plaintiff was terminated from his employment shortly after returning from medical leave and after making complaints about discriminatory and retaliatory practices in the workplace.

11.    Particularly, in or around April 2020, Plaintiff notified Schausten and his then-peer Rowch that he was going to need to take leave for an upcoming surgery.  Per policy, he was required to provide advance notice before taking leave and made the disclosure to prepare Schausten and Rowch for his upcoming absence.  Schausten then assisted Plaintiff with making application for FMLA leave, helping coordinate between Plaintiff and the HR Department through the FMLA process.

12.    Thereafter, on or about July 9, 2020, Plaintiff submitted a FMLA Employee Request Form and Certification of Health Care Provider, reflecting he was scheduled to have

a right hepatectomy (i.e., a surgical resection of the liver) on July 17, 2020, and would be required to take off work for several weeks thereafter. The procedure and leave request related to Plaintiff being a living organ donor to his father-in-law (who was also AFRMIC's former CEO).

13.    Plaintiff's request for FMLA was granted and he was off work from on or about July 14, 2020, until on or about August 2, 2020.

14.    When he returned from medical leave on or about August 3, 2020, his supervisor, Robin Schausten, under whom he had worked for about two (2) years, had resigned.

15.    His department had also been reorganized, now falling under CFO Autrey (who is believed to be White). And, his new supervisor became Program Manager Rowch (who is believed to be White), previously a peer/co-worker of Plaintiff.

16.    On or about September 3, 2020, Rowch presented Plaintiff with a performance evaluation, dated August 31, 2020. Therein, negative comments were made about his job performance and his commitment to the company.

17.    Particularly, Rowch wrote (after being Plaintiff's supervisor for less than one month) that she "felt" that "sometimes" his dedication was not there. She also wrote that he needed to be more goal-oriented and more aware of deadlines. She stated that she wished he would get more focused. She also wrote that "several times during the day [he is] not in [his] office which concerns [her] about the amount of work [he has]."

18.    In response, Plaintiff stated that no one had addressed any such concerns with him. In fact, while working under Schausten for the past two (2) years, Plaintiff received three (3) merit raises and two (2) cash awards for outstanding performance.

19.    Plaintiff asked how Rowch could complete the annual performance review when she had only been his supervisor for the past month.

20.    He asked Rowch for specifics that would support the statements made in the review. Rowch could give no examples. Instead, Rowch stated that she would have to speak with Autrey (believed to have participated in Plaintiff's evaluation) and get back with him.

21.    When Rowch followed up with Plaintiff, Rowch still provided no specific instances to support the statements made in the review.   And, Rowch could offer no ways for Plaintiff to improve.  Rather, Rowch said Plaintiff would be re-evaluated in 60 days, and the August 31, 2020 review would be destroyed.

22.    Rowch also attempted to blame the negative remarks in the August 31, 2020 review on Plaintiff's former supervisor, Schausten.  However, Plaintiff spoke to Schausten, who told him she never made any such comments about Plaintiff's performance.  And, Srna told Plaintiff that Rowch should not have given Plaintiff the evaluation.  However, Srna failed to take any remedial action.

23.    In addition to the retaliatory performance evaluation, Plaintiff was offended to learn that his confidential medical information was shared among employees and during the AFRMIC's Board of Directors meeting.

24.    Particularly, upon Plaintiff leaving the office on or about July 14, 2020, to begin his period of FMLA leave, Plaintiff was surprised when CEO John Srna and Director of Informational Technology Ruth Jackson commented about his upcoming surgery.

25.    And, after he returned to work, Plaintiff learned Autrey spoke with the Board and other employees about his medical leave and the reason for the same.

26.    And, upon returning from FMLA leave, Carol (last name unknown) and other employees commented on Plaintiff's surgery.

27.    In light of the foregoing, on or about September 11, 2020, Plaintiff submitted a detailed internal written complaint via AFRMIC's online complaint portal, reporting the discriminatory, harassing and retaliatory practices he witnessed and endured.

28.    His complaint included complaints of retaliation for his use of FMLA leave and the fact that his private and confidential medical information had been shared among AFRMIC's officers and directors at the Board meeting and among other employees.

29.    He further complained about the retaliatory performance review he received upon his return from medical leave.

30.    His internal complaint also included complaints of race discrimination.  He pointed out that he is one of only four Black employees out of approximately 150. He complained about the lack of Black managers, directors and senior staff.   And, he complained that he felt he was being targeted due to his race in a company that does not promote racial diversity.

31.     Negative comments had also been made to Plaintiff from other employees about the fact that his wife is White.  Black employees were overlooked for promotions, which were given instead to White employees.  And, a White employee had called a Black employee a "n*****" without repercussion.

32.     Thereafter, on or about September 15, 2020, just days after submitting his internal complaint, Plaintiff received an electronic acknowledgment receipt of his complaint from HR Director Baranek (who is White), stating an investigation would be conducted.  The acknowledgment also promised no retaliation in response to his complaint.

33.     Days later, on or about September 22, 2020, Plaintiff was called to a meeting with Baranek and HR & Benefits Specialist JoAnn Whittington (believed to be White) under the guise of investigating Plaintiff's September 11, 2020 complaint.

34.     Significantly, however, Baranek was one of the individuals about whom Plaintiff complained in his September 11, 2020 complaint.

35.     Despite this, the Board of Directors (who were responsible for directing how such complaints are handled and who investigates such complaints) put Baranek in charge of investigating Plaintiff's complaint.

36.     Plaintiff had valid concerns as to how effective an investigation could be when one of the perpetrators was in charge of the investigation. And, Plaintiff filed a second internal complaint the following day (i.e., on or about September 23, 2020), expressing such concerns.

37.     Plaintiff's concerns with Baranek's bias were proven true when Baranek berated Plaintiff during the September 22, 2020 meeting about his internal written complaint. Twice, Baranek slammed his documents on the table in front of Plaintiff and eventually ordered Plaintiff to leave.

38.     At one point, when Plaintiff expressed he did not understand certain questions he was being asked, Baranek slammed documents down, saying "if you don't want to help, we're done," unjustly accusing Plaintiff of not being cooperative.

39.     Because of Baranek's hostility, Plaintiff asked if he could have his lawyer present in the meeting.  However, Baranek refused and became increasingly angry with Plaintiff.  He said there was no need for Plaintiff to have an attorney and badgered Plaintiff about why he wanted an attorney.  He then told Plaintiff they "were not going to have an attorney" and that if Plaintiff could not meet without an attorney, Plaintiff could "just leave."

40.     Baranek then proceeded, telling Plaintiff that he (Baranek) would put whatever he wanted in the investigatory report to the Board concerning Plaintiff's complaint.

41.     The next day, on or about September 23, 2020, Plaintiff filed a second internal complaint (the handling of which would have again been overseen by the members of the Board).

42.     He complained about the fact that an alleged investigator was one of the people about whom he complained.  He also complained about the retaliatory treatment to which he was subjected in the September 22, 2020 meeting.

43.    On or about Monday, October 12, 2020, Plaintiff was told by a health care provider to quarantine for fourteen (14) days due to his wife testing positive for COVID. Plaintiff called Rowch and the HR Department to notify them of the same. However, he was unable to reach them and did not hear back, thus informed two of his co-workers.

44.    Soon after, Plaintiff received an email chastising him for allegedly not following procedure in notifying of his absence. However, Plaintiff had, in fact, followed policy by reaching out to Rowch and the HR Department about his need for leave. Plaintiff complained to Srna about the manner in which Rowch treated him. However, Srna dismissively responded, saying he did not believe Rowch was being malicious.

45.    Then, about five (5) days into Plaintiff's quarantine, on or about Saturday, October 17, 2020, Plaintiff began experiencing symptoms of COVID. Therefore, his period of quarantine was extended accordingly.

46.    During, at least, a portion of this period, Defendant AFRMIC's payroll records reflect Plaintiff did not receive paid sick leave under the FLSA and EPSLA, but rather reflect that Plaintiff was required to use his accrued, unused Paid Time Off ("PTO").

47.    On or about October 28, 2020, while still in quarantine, Plaintiff received a letter from an attorney, Brandon Wilson, with Whitworth, Wilson & Evans, stating "AFRMIC has concluded that there is no evidence of any violation of law" and that AFRMIC considered the matter closed. That is, the Board and Srna failed to take any remedial action.

48.    At the end of his period of quarantine, he received a negative COVID test

result so that he could physically return to the workplace.  His first day back in the workplace was Monday, November 2, 2020.

49.    On or about Wednesday, November 4, 2020, Plaintiff was called to a meeting with Baranek and attorney Brandon Wilson (believed to be White), wherein Plaintiff was fired and offered a severance agreement, asking him to release any and all claims against AFRMIC, as well as against its officers, directors and employees (which would include Baranek and the other named Defendants).  Upon information and belief, Baranek, Autrey, and Srna were involved in making Plaintiff's termination decision.

50.    The claimed reason for termination was the alleged elimination of one of AFRMIC's subsidiaries, allegedly resulting in a lack of work sufficient to sustain Plaintiff's position.

51.    However, such reason was pretext for numerous reasons, including but not limited to the fact that Plaintiff performed work beyond that of the subject subsidiary.

52.    Treasury Department staff were also told by Autrey, Rowch and Srna during a meeting held on or about August 17, 2020 that they should not be fearful of losing their jobs due to the subsidiary being eliminated.

53.    Moreover, Plaintiff had the most seniority and experience in the Treasury Department, as compared to his peers, who were White.  Autrey had also previously told Schausten that Plaintiff was not being looked at for layoff, but rather another Treasury employee, Christian Holcomb (who is White), was being considered for lay-off.

54.     The elimination of the subsidiary was also not slated to immediately occur and there was more work to be done for the existing customers through the end of 2022.  And, per past practice, employees were allowed to transfer to a different department if they did not want to work on subsidiary-related matters any longer.

55.     Also, on or about January 9, 2021, just a few months after Plaintiff's termination, Autrey posted a message on Facebook, stating that she was looking to hire a Treasury Manager and another person in Accounting within the Treasury Department.

56.     Hence, the claim that there was not sufficient work for Plaintiff to perform was a sham.

57.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries as described below.

## COUNT I:  FMLA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

58.     This Count is brought against all Defendants.

59.     The matters alleged above constitute retaliation for Plaintiff's use of FMLA qualifying leave in violation of the FMLA.

60.     Plaintiff was entitled to medical leave because he worked for Defendant AFRMIC, an entity with more than 50 employees within a 75 mile radius from Plaintiff's worksite for more than one (1) year and for more than 1,250 hours within the one year prior

to his need for leave.

61.     In addition to Defendant AFRMIC, the individual Defendants are "employers" within the meaning of the FMLA.

62.     Defendants retaliated against Plaintiff, taking adverse actions against him for his use of medical leave by *inter alia* giving him a negative performance evaluation and terminating his employment.

63.     As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

64.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT II: ADA/ADAAA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

65.     This Count is brought against Defendant AFRMIC.

66.     The matters alleged above constitute disability association-discrimination, breach of confidentiality and retaliation in violation of the ADA and ADAAA.

67.     More specifically, Plaintiff's father-in-law, who suffered from a liver condition

that required costly procedures, including a liver transplant, is a qualified individual with a disability, in that, he suffered from a physical impairment which substantially limited his ability to perform one or more major life activities, including *inter alia* his ability to eat, digest and perform various physical activities. His impairments also impacted one or more of his internal bodily processes including but not limited to his digestive and immune systems.

68.    Plaintiff is entitled to relief because he was qualified to perform his job; he was terminated; Defendant AFRMIC knew at the time that Plaintiff's father-in-law had a disability; and the termination occurred under circumstances giving rise to an inference of discrimination.

69.    Plaintiff is further entitled to relief because Defendant AFRMIC obtained medical information through employer-related medical inquiries; the information was disclosed by Defendant AFRMIC and not treated confidentially; and Plaintiff suffered a tangible injury.

70.    Plaintiff is also entitled to relief for retaliation because Plaintiff engaged in protected opposition to disability-association discrimination and participated in proceedings concerning disability-association-based discrimination; he suffered adverse actions subsequent to the protected activity, and a causal link exists between the protected activity and the adverse actions

71.    The matters alleged above constitute a violation of 42 U.S.C. §12203(a) for

retaliating against Plaintiff for his opposition to Defendant's unlawful disability-based employment practices and retaliating against Plaintiff for participating in proceedings concerning disability-based discrimination, including filing one or more internal complaints via Defendant AFRMIC's complaint process.

72.    As a direct and proximate result of Defendant AFRMIC's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

73.    Because the actions of Defendant AFRMIC were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is also entitled to punitive damages.

## COUNT III:  42 U.S.C. § 1981

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

74.    This Count is asserted against Defendants AFRMIC, Baranek, Autrey, and Srna.

75.    The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination, harassment, the creation of a racially based hostile work environment and retaliation.

76.    Plaintiff is entitled to relief for race discrimination because he is Black, he was qualified for his job, he was terminated from his employment, and his job was not eliminated.

77.    Plaintiff is further entitled to relief for retaliation because he engaged in protected opposition to race discrimination and harassment and participated in a complaint

process concerning racial discrimination and harassment; he suffered adverse actions subsequent to the protected activity, and a causal link exists between the protected activity and the adverse actions.

78.     Plaintiff is also entitled to relief for race-based harassment and the creation of a race-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of employment, and the harassment was race-based or stemmed from race-based animus.

79.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

80.     Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## **COUNT IV:  Title VII – Race**

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

81.     This count is asserted against Defendant AFRMIC.

82.     The matters alleged above constitute violations of Title VII of the Civil Rights Act in the nature of race discrimination, race-based harassment, the creation of a race-based

hostile work environment and retaliation.

83.    Plaintiff is entitled to relief for race discrimination because he is Black, he was qualified for his job, he was terminated from his employment, and his job was not eliminated.

84.    Plaintiff is entitled to relief for retaliation because he engaged in protected opposition to race discrimination and harassment and participated in a complaint process concerning racial discrimination and harassment; he suffered adverse actions subsequent to the protected activity, and a causal link exists between the protected activity and the adverse actions.

85.    The matters alleged above constitute a violation of 42 U.S.C. 2000e-3(a) for retaliating against Plaintiff for his opposition to Defendant's unlawful race-based employment practices and retaliating against Plaintiff for participating in proceedings concerning race discrimination and discrimination, including filing internal complaints via Defendant AFRMIC's complaint process.

86.    Plaintiff is also entitled to relief for race-based harassment and the creation of a race-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of employment, and the harassment was race-based or stemmed from race-based animus.

87.    As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of

1991.

88.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT V: FLSA/EPSLA

For his fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

89.     This count is asserted against all Defendants AFRMIC, Baranek, Autrey, and Srna.

90.     The matters described above constitute violations of the FLSA and EPSLA.

91.     Defendant is an employer as defined by the FLSA and EPSLA.

92.     On or about October 12, 2020, Plaintiff's wife tested positive for COVID-19, and Plaintiff was advised by a health care provider to quarantine.

93.     Then, about five (5) days later, on or about October 17, 2020, Plaintiff began experiencing symptoms of COVID.  Thus, he was required to quarantine and not return to work until on or about November 2, 2020.

94.     Plaintiff was entitled to 2/3 of his regular pay for 80 hours of paid sick leave to care for his wife and to self-quarantine per orders from the healthcare provider, as well as due to the fact that he was experiencing symptoms of COVID-19.

95.     Despite this, Defendant AFRMIC failed to pay Plaintiff 2/3 of his regular pay

for the relevant period, and instead required Plaintiff to use his accrued, unused Paid Time Off ("PTO").

96.    Defendants also retaliated against Plaintiff, terminating his employment just two days after he returned from taking leave pursuant to the FLSA and EPSLA.

97.    As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of the FLSA/EPSLA and the requirements contained therein, but willfully violated Plaintiff's rights.

98.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FLSA and EPSLA, attorneys' fees and costs.

## COUNT VI: FMLA/FFCRA

For his sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

99.    This count is asserted against all Defendants AFRMIC, Baranek, Autrey, and Srna.

100.    The matters described above constitute violations of the FMLA and FFCRA.

101.    The FMLA/FFCRA provides employees with the right to take job-protected medical leave and the right to take job-protected leave and makes it unlawful for an employer to discriminate or retaliate against an eligible employee who exercises his right to protected

leave.

102.    From on or about October 17, 2020, until on or about November 2, 2020, Plaintiff was required to take protected leave to quarantine due to COVID-19, as set forth herein.

103.    Defendants discriminated and/or retaliated against Plaintiff because he exercised or attempted to exercise his rights under the FMLA/FFRCA, by *inter alia* terminating his employment on account of his leave usage.

104.    As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of the FMLA/FFRCA and the requirements contained therein, but willfully violated Plaintiff's rights.

105.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA/FFRCA, attorneys' fees and costs.

## **COUNT VII: Invasion of Privacy**

For his seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

106.    This count is asserted against Defendant Autrey.

107.    The acts described above constitute invasion of privacy in violation of Oklahoma state law.  Defendant Autrey intentionally intruded upon the privacy of Plaintiff,

without the consent of Plaintiff, and the intrusion was highly offensive to a reasonable person.

108.    As a direct and proximate result of Defendant Autrey's actions, Plaintiff is entitled to all damages allowed by Oklahoma state law.

109.    Moreover, because the actions of Defendant Autrey were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT VIII: Tortious Interference

For his eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

110.    This count is asserted against Defendants Baranek, Autrey and Srna.

111.    The acts described above constitute unlawful tortious interference with a contractual/employment relationship. Defendants' actions were malicious and caused actual harm to Plaintiff's employment relationship with AFRMIC. Defendant Baranek, Autrey, and Srna had no justification, excuse or privilege for such interference.

112.    Defendants knew or should have known of Plaintiff's employment relationship and expectancy of continued employment with AFRMIC.

113.    Defendants were involved in wrongfully terminating Plaintiff's employment based on the unlawful grounds set forth above. As such, Defendants interfered with the employment relationship and expectation of continued employment Plaintiff had with AFRMIC.

114.    The actions of Defendants were intentional, malicious and wrongful. Defendants were not acting to serve any legitimate or lawful interest of AFRMIC, but was pursuing their own motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federal protected rights.

115.    In addition to not being legitimate, Defendants' actions were not justified or privileged.

116.    As a result, Plaintiff is entitled to all damages allowed by Oklahoma state law.

117.    Moreover, because the actions of Defendants were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## **COUNT IX: Interference with Prospective Economic Advantage**

For his ninth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

118.    This count is asserted against Defendants Baranek, Autrey and Srna.

119.    The acts described above constitute unlawful interference with Plaintiff's prospective economic advantage.

120.    Plaintiff had a reasonable expectation for profit in his employment with AFRMIC.

121.    Defendants had knowledge of this relationship and/or expectancy.

122.    Defendants intentionally induced or caused a breach of Plaintiff's expectancy.

123.    Such a breach resulted in damage to Plaintiff.

22

124.    Defendants were involved in wrongfully terminating Plaintiff's employment based on the unlawful grounds set out above.  As such, Defendants interfered with the employment relationship and expectation of continued employment Plaintiff had with AFRMIC.

125.    The actions of Defendants were intentional, malicious and wrongful.  And, Defendants had no justification, excuse or privilege for their actions.  Defendants were not acting to serve any legitimate or lawful interest of AFRMIC, but were pursuing their own motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federal protected rights.

126.    Plaintiff suffered damages as a direct result of the actions of Defendants.  And, such damages was proximately sustained as a direct result of the complained-of interference.

127.    As a result, Plaintiff is entitled to all damages allowed by Oklahoma state law.

128.    Moreover, because the actions of Defendants were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests the Court enter judgment in favor of Plaintiff and against the Defendants and assess lost wages, including back pay and front pay, actual, compensatory, liquidated and punitive damages together with pre- and post-judgment interests, costs, attorney's fees, all other damages available under federal and Oklahoma state law, and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 18th DAY OF OCTOBER, 2021.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net