**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JEAN-FRANCOIS GNAPI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-21-1017-F |
| | ) | |
| AMERICAN FARMERS & RANCHERS MUTUAL INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the court is Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint. Doc. no. 22. Plaintiff has responded, opposing dismissal, and defendants have replied. Doc. nos. 23 and 24. Upon due consideration of the parties' submissions, the court makes its determination.

I.

Plaintiff Jean-Francois Gnapi (Gnapi), who is black, was formerly employed by defendant American Farmers & Ranchers Mutual Insurance Co. (AFR) as a staff accountant. His employment was terminated in November of 2020. He filed this action against AFR and four of its employees – Rick Baranek (Baranek), Human Resources Director, Angela Michelle Rowch (Rowch), Interim Treasury Director, Bernadette Autrey (Autrey), Chief Financial Officer, and Jon Srna (Srna), President and Chief Executive Officer – seeking to recover damages arising out of his termination and other conduct which occurred during his employment. He seeks damages under various theories of liability. Defendants seek, pursuant to Rule 12(b)(6), Fed. R. Civ. P., dismissal of several claims alleged in Gnapi's amended

complaint. Specifically, defendants seek to dismiss (1) claims against Rowch, Autrey, and Srna under the Family Medical Leave Act (FMLA) (Count I); (2) claims against AFR, Baranek, Autrey, and Srna under 42 U.S.C. § 1981 (Count III); (3) claims against AFR under Title VII of the Civil Rights Act of 1964 (Title VII) (Count IV); (4) claims against Autrey and Srna under the FMLA and the Family First Coronavirus Response Act (FFCRA) (Count VI); (5) claim against Autrey for invasion of privacy under state law (Count VII); (5) claims against Baranek, Autrey, and Srna for tortious inference with contractual/employment relationship under state law (Count VIII); and (6) claims against Baranek, Autrey, and Srna for unlawful interference with prospective economic advantage under state law (Count IX).

II.

*FMLA Claims*

Defendants challenge the FMLA claims alleged against defendants Rowch, Autrey, and Srna on the basis that they cannot be held individually liable for such claims. According to defendants, Gnapi's amended complaint is devoid of allegations to plausibly establish they are an "employer" within the meaning of the FMLA. Defendants contend that to qualify as an "employer," an individual must not only have supervisory authority over the employee, but the individual must also have corporate responsibilities. Defendants assert that the amended complaint does not allege that defendant Rowch possessed any corporate responsibilities beyond that of being Gnapi's supervisor. Although they acknowledge Autrey and Srna possessed corporate roles for AFR, defendants contend that the amended complaint fails to set forth allegations showing they were involved in Gnapi's request for FMLA leave.

When a plaintiff brings an FMLA retaliation or discrimination claim, he must establish that the defendant is his employer. *See*, Miles v. Unified School District No. 500, Kansas City, Kansas, 347 F. Supp. 3d 626, 629 (D. Kan. 2018) (citing 29

U.S.C. § 2615(a)(1), (2)). The Tenth Circuit has not yet determined whether an individual may qualify as an "employer" under the FMLA, and therefore be held liable for FMLA violations. *Id*. at 630. The plain language of the FMLA indicates they may. It broadly defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). And the FMLA implementing regulations state in part that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of requirements of the FMLA." 29 C.F.R. § 825.104(d). Further, district courts in the Tenth Circuit, including district courts in this district, have concluded that individuals may be held liable as an employer under the FMLA. *See*, Rowley v. Brigham Young University, 372 F. Supp. 3d 1322, 1331 (D. Utah 2019); Miles, 347 F. Supp. 3d at 630; Cordova v. New Mexico, 283 F. Supp. 3d 1028, 1039 (D.N.M. 2017); Saavedra v. Lowe's Home Centers, Inc., 748 F. Supp. 2d 1273, 1284 (D.N.M. 2010); *see also*, Johnson v. Oklahoma ex rel. Oklahoma Department of Veterans Affairs, Case No. CIV-20-1248-R, 2021 WL 1063803, at *7 (W.D. Okla. Mar. 19, 2021). This court agrees.

While district courts have concluded that individuals may qualify as employers, they have not agreed on how to determine whether they qualify. "Some courts apply the 'economic reality test,' . . . [which] requires the court to consider four nonexclusive factors in making its determination: '(i) whether the alleged employer has the power to hire and fire employees; (ii) whether the alleged employer supervises and controls employee work schedules or conditions of employment; (iii) whether the alleged employer determines the rate and method of payment; and (iv) whether the alleged employer maintains employment records.' Other courts apply a 'control' test, asking 'whether the [individual] defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position.'" Zisumbo v. Convergys Corp., Case No. 1:14-cv-00134, 2020 WL

3546794, at *11 (D. Utah June 30, 2020) (quoting Saavedra, 748 F. Supp. 2d at 1292). Lastly, a number of courts apply a "corporate responsibilities" test, which requires that the individual defendant possess a corporate role beyond the role as supervisor. *Id*.; Heston v. FirstBank of Colorado, Case No. 19-cv-02890-KLM, 2020 WL 4350195, at *4 (D. Colo. July 28, 2020).

Defendants advocate the "corporate responsibilities" test, arguing that only corporate officers are employers under the FMLA. However, the court concludes the economic reality test should apply. *See*, Rowley, 372 F. Supp. at 1332; Miles, 347 F. Supp. 3d at 630; Cordova, 283 F. Supp. 3d at 1039; Zisumbo, 2020 WL 3546794, at *12. As stated, the economic reality test includes inquiries into whether the alleged individual has the power to hire and fire employees; supervises and controls employee work schedules or conditions of employment; determines the rate and method of payment; and maintains employment records. *Id*. The court also should consider the defendant's involvement and control over the plaintiff's ability to take FMLA leave. Miles, 347 F. Supp. 3d at 630; Cordova, 283 F. Supp. 3d at 1040. However, no single factor controls the result. *Id*. Further, at the motion to dismiss stage, the plaintiff need not allege specific facts about defendant's authority and control over plaintiff, particularly when factual issues dominate that analysis. *Id*.

Accepting all factual allegations in the amended complaint as true and drawing all reasonable inferences in Gnapi's favor, *see*, Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010), the court concludes that Gnapi pleads sufficient facts to satisfy his burden under the economic reality test with respect to individual defendants Rowch, Autrey, and Srna. Further, the court finds that Gnapi has alleged plausible FMLA claims against them. The court therefore concludes that dismissal of the FMLA claims under Rule 12(b)(6) is not appropriate.

*Section 1981 and Title VII Claims*

In the amended complaint, Gnapi alleges section 1981 and Title VII race discrimination claims, race-based harassment hostile work environment claims, and retaliation claims. Defendants challenge the discrimination and hostile work environment claims. With respect to the discrimination claims, defendants argue that Gnapi's allegations are insufficient to plausibly establish the prima facie case, specifically, that Gnapi was terminated under circumstances giving rise to an inference of discrimination. In addition, defendants point out that unlike Title VII, section 1981 requires Gnapi to establish that a defendant intentionally discriminated against him based upon his race. Defendants contend that Gnapi's allegations are woefully inadequate to create an inference of race-based discrimination. As to the harassment and hostile work environment claims, defendants argue that Gnapi fails to allege facts to plausibly establish that his workplace was permeated with discriminatory intimidation, ridicule, and insult. Defendants also contend that the amended complaint is devoid of factual allegations to plausibly show that the alleged harassment altered a term, condition, or privilege of his employment.

Although Gnapi need not establish a prima facie case of discrimination to withstand a motion to dismiss, *see*, Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012), the court concludes that Gnapi has done so in the amended complaint. As Gnapi recognizes, he may establish a prima facie case by showing (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. English v. Colorado Dept. of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001); Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1239 (10th Cir. 2000). Accepting all factual allegations as true and drawing all reasonable inferences in Gnapi's favor, the court concludes that each of these elements is established. The court concludes that dismissal of the section 1981 and Title VII race discrimination claims under Rule 12(b)(6) is not appropriate.

To state a hostile work environment claim, "a plaintiff must, among other things, plead facts sufficient to show that the work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Brown v. LaFerry's LP Gas Co., Inc., 708 Fed. Appx. 518, 520 (10th Cir. 2017) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "A plaintiff must allege facts showing that the work environment 'is both subjectively *and* objectively hostile or abusive' under this standard." *Id*. (quoting Lounds v. Lincare, 812 F.3d 1208, 1222 (10th Cir. 2015)). "To meet the objective portion of this test, the alleged harassment must 'be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances.'" *Id*.

"Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." Throupe v. University of Denver, 988 F.3d 1243, 1252 (10th Cir. 2021) (citing Lounds, 812 F.3d at 1222). To make this determination, the court "look[s] to the 'totality of the circumstances' and 'consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012)). Further, "'facially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct'" and such conduct should be considered in evaluating a hostile work environment claim. Brown, 708 Fed. Appx. at 521 (quoting Lounds, 812 F.3d at 1224).

Accepting the factual allegations as true and drawing all reasonable inferences in Gnapi's favor, the court concludes that Gnapi fails to allege conduct to plausibly

establish that his work environment was permeated with discriminatory intimidation, insult, or ridicule that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. As to severity, the court notes that isolated incidents, such as Gnapi alleges, "are sufficient to support a hostile work environment only when they are 'threatening and severe' or 'especially egregious or extreme.'" Brown, 708 Fed. Appx. at 522 (quoting Morris, 666 F.3d at 666-67). "Most incidents found to meet this standard involve some kind of physical assault." *Id*. No such allegation is made by Gnapi, and the facts alleged by him "'do not rise to the extreme level of conduct' required for isolated incidents to give rise to a cognizable claim for a hostile work environment." *Id*. (quoting Morris, 666 F.3d at 667-68). As to pervasiveness, the court concludes that the isolated incidents alleged by Gnapi, viewed in the aggregate, are "far from the 'steady barrage' of discriminatory conduct necessary to establish pervasiveness." Throupe, 988 F.3d at 1255 (quoting Morris, 666 F.3d at 666). Therefore, the court concludes that dismissal of Gnapi's section 1981 and Title VII race-based hostile work environment claims under Rule 12(b)(6) is appropriate. The claims will be dismissed without prejudice.

*Invasion of Privacy*

Gnapi alleges in the amended complaint that defendant Autrey invaded his privacy in violation of Oklahoma law. Specifically, Gnapi alleges that defendant Autrey spoke with AFR Board of Directors and other employees about the medical leave he took and the reason for it. Gnapi alleges that defendant Srna and other employees commented to him about his surgery. Defendant Autrey points out that under Oklahoma law, there are four recognized categories of the invasion-of-privacy tort. According to defendant, the amended complaint is unclear which category Gnapi's tort claim falls under, but to the extent Gnapi's tort claim is based on a publication of private facts or an intrusion upon seclusion, defendant Autrey

maintains that each claim fails as a matter of law. Specifically, defendant Autrey argues that Gnapi cannot state a plausible claim because the disclosure of confidential medical information was not highly offensive and was not shared with the public.

Gnapi responds that his invasion of privacy claim is based on an intrusion of seclusion. And citing Gilmore v. Enogex, Inc., 878 P.2d 360, 366 (Okla. 1994), Gnapi asserts that he need only show a nonconsensual intrusion upon his privacy by defendant Autrey and that the intrusion was highly offensive to a reasonable person. According to Gnapi, the "highly offensive" inquiry is a question of fact, making such an evaluation inappropriate at the motion to dismiss stage. In any event, Gnapi contends that courts have found that disclosure of confidential medical information is highly offensive.

Although defendant Autrey has cited cases wherein the courts have analyzed whether the subject conduct of a defendant is highly offensive to a reasonable person at the motion to dismiss stage, the court declines to do so. Relying upon Eddy v. Brown, 715 P.2d 74, 77 (Okla. 1986), defendant Autrey asserts that an employee, like Gnapi, may not claim a privacy interest in medical information when the information is of legitimate concern to the employer. However, viewing all factual allegations as true and drawing all reasonable inferences in Gnapi's favor, the court cannot conclude as a matter of law that the medical information obtained by defendant Autrey was "of legitimate concern to [the employer]." Eddy, 715 P.2d at 77. Further, although defendant Autrey contends the allegations do not show that the medical information was wrongfully obtained, the court concludes that it can be reasonably inferred from the allegations pled that the information was wrongfully obtained by defendant Autrey. These issues, in the court's view, may be re-

examined at the summary judgment stage after appropriate discovery.[1] Thus, the court concludes–albeit not by a wide margin–that dismissal of the invasion of privacy claim under Rule 12(b)(6) is not appropriate.

*Tortious Interference/Interference with Prospective Economic Advantage*

Lastly, Gnapi alleges tortious interference and interference with prospective economic advantage claims against defendants Baranek, Autrey, and Srna. The claims arise from Gnapi's termination from employment. Defendants assert that both claims are deficient because they are agents and employees of AFR and could not have interfered with any employment contract or business relationship between Gnapi and AFR, unless they acted in bad faith and contrary to the interests of AFR. According to defendants, the amended complaint fails to allege facts sufficient to demonstrate that they acted in bad faith and contrary to the interests of the employer.

Gnapi counters that he alleges sufficient facts to show that defendants Baranek, Autrey, and Srna, in terminating him, were not acting in furtherance of any legitimate interest of AFR, but rather, were pursuing their own personal motives. Gnapi asserts that the facts show that defendant Baranek made clear his hostility toward Gnapi in a meeting (shortly before termination) to discuss Gnapi's internal complaint, which included allegations of race discrimination. And he asserts that an inference can be drawn from the facts that Srna and Autrey, who were named in that complaint along with Baranek, shared the same ill-motive of Baranek because they joined in the decision with him to terminate Gnapi.

[1] Even though the court concludes that this invasion of privacy claim survives a motion to dismiss, the court will observe, in fairness to plaintiff, that if the record shows, at the summary judgment stage, that AFR had a legitimate business reason to be made aware of the medical information in question, that alone may be fatal to the invasion claim. Also fair game for consideration at the summary judgment stage will be issues as to whether the medical information was in fact wrongfully acquired and whether, by its nature, the information was such that disclosure could be considered to be highly offensive.

Generally, an agent of a principal cannot be held liable for interfering with a contract or business relationship between the principal and a third party. See, Martin v. Johnson, 975 P.2d 889, 896 (Okla. 1998). An exception to the rule applies if the agent was acting in bad faith and contrary to the interests of the employer. *Id*. For the exception to apply, the plaintiff must show that the agent was acting contrary to the business interest of his employer and in furtherance of the agent's own, personal interests. Grillot v. Oklahoma ex rel. University of Oklahoma, Case No. CIV-19-0241-F, 2019 WL 3558183, at *4 (W.D. Okla. Aug. 5, 2019).

Viewing all factual allegations as true and drawing all reasonable inferences from those allegations in Gnapi's favor, the court concludes that Gnapi alleges plausible tortious interference and interference with prospective economic advantage claims against defendant Baranek. The facts pleaded reasonably suggest that defendant Baranek's alleged acts of interference were to further his own personal interests rather than the interests of AFR. However, the court concludes that the facts are not sufficient to allege plausible claims against defendants Autrey and Srna. They do not reasonably suggest that defendants Autrey and Srna were pursuing their own personal interests in terminating Gnapi. They do not show that defendants shared the same alleged ill-motive of Baranek. The court concludes that dismissal under Rule 12(b)(6) is appropriate, and the claims against defendants Autrey and Srna will be dismissed without prejudice.

III.

Accordingly, Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint (doc. no. 22) is **GRANTED in part** and **DENIED in part**. The race-based hostile work environment claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act are dismissed without prejudice under Rule 12(b)(6), Fed. R. Civ. P. The tortious interference and interference with prospective economic advantage claims under state law against defendants Bernadette Autrey and Jon Srna are also

dismissed without prejudice under Rule 12(b)(6), Fed. R. Civ. P. All other challenged claims remain pending.

IT IS SO ORDERED this 25th day of April, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-1017p004.docx